## CALISE v. THE CAIRNSTRATH.

(District Court, E. D. New York. June 3, 1903.)

1. SHIPPING—LIABILITY FOR INJURY OF STEVEDORE—EVIDENCE CONSIDERED.

Evidence considered, and *held* insufficient to sustain the burden resting on the libelant to prove that an injury received by him while engaged in loading a steamship as gangwayman for the stevedores was caused by the disobedience of his orders by the winchman who was employed by the ship.

In Admiralty. Libel to recover for personal injuries.

Rendich & Brennan (Richard A. Rendich, of counsel), for libelant.
Convers & Kirlin (Charles R. Hickox, of counsel), for claimant.

THOMAS, District Judge. The libelant, a gangwayman, was injured under the following circumstances: For the purpose of loading the steamship, a skid extended from the dock to the upper deck, and had its superior end connected with a horizontal skid, whose inboard end rested upon the coaming of the hatch. The method of loading was as follows: The draught raised by a boom on the vessel was drawn up the first skid, and then carried along the second skid, at whose inner end was the hatch through which the draught passed to the hold. At the time of the accident the cargo had reached the square of the hatch, and the libelant's evidence is that for some 15 draughts before the accident each draught had been stopped at the upper end of the first skid, until the gangwayman ascertained whether the men in the hold were ready to receive the draught. Finally a large draught of boxed wheels was hoisted along the dock skid, but before reaching the upper end thereof the libelant claims that he ordered the winchman, by word and gesture, to stop, and that he thereupon, turning his back to the draught, went along the deck skid, and looked down into the hatch, leaning over for the purpose of hailing the foreman of the gang therein, to ascertain whether he was ready for a draught, but that at that instant the winchman again started the winch, which came over the side, and was carried along the inner skid until it struck the libelant, and threw him into the hold, breaking the ulna of his left hand, and producing a dislocation of the fractured bone, contusing the wrist of the right hand and the muscles of the back, necessitating 24 visits on the part of the doctor, the value of which he places at $58, and detention from work for four months. The winchman belonged to the ship's crew, and the libelant was employed by a firm of stevedores who had a contract for loading the vessel. The claim is that the winchman, after having been ordered to stop, and stopping accordingly, did without orders start his winch and bring the draught against the libelant, while he was necessarily engaged with his back thereto in learning the situation of the hold with regard to the reception of the draught.

The libelant testified in support of his contention, and his evidence received some corroboration from the witness Demaio, who was in the hold, and the witness Napoli, who was on the dock. But his evidence is contradicted in its main features by Wotton, the winchman, Anderson, the chief officer, and Hawick, the second officer. These

three men testify that they stood looking directly at the gangwayman, and that he stood facing the draught as it came on to the skid, that he was not looking down into the hold in the manner stated by him, and that he did not give the orders to stop the draught testified to by him. The burden of proof is upon the libelant, but the evidence of the claimant far outweighs that produced by the libelant, and carries thorough conviction that the libel should be dismissed.